IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MANUEL CASTRO DUBON,
     Petitioner,

vs.                            Case No.:  3:12cv382/MCR/EMT

MICHAEL D. CREWS,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed a "First Answer," asserting Petitioner's claims are procedurally barred, and reserving the opportunity to address the merits of Petitioner's claims until the court determines the procedural issues (doc. 17).  Respondent accompanied its answer with relevant portions of the state court record (*id.*).  Petitioner filed a reply (doc. 22).

     The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 17).[1]  Petitioner was indicted in the Circuit Court in and for Escambia County,

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2005-CF-3324, on one count of first degree murder with a weapon (Ex. A at 3–4).

Following a jury trial, he was convicted as charged (Ex. A at 52–53, Exs. C, D, E).  Petitioner was

sentenced to life imprisonment with a mandatory minimum term of twenty-five (25) years and with

pre-sentence jail credit of 495 days (Ex. A at 55–61, Ex. E at 530).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of

Appeal ("First DCA"), Case No. 1D09-1889 (Ex. F).  The First DCA affirmed the judgment per

curiam without written opinion on March 5, 2010, with the mandate issuing March 23, 2010 (Exs.

H, I).  Dubon v. State, 29 So. 3d 1120 (Fla. 1st DCA 2010) (Table).

On March 23, 2010, Petitioner filed a motion for reduction or modification of sentence,

pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. J).  The state circuit court

denied the motion in an order rendered April 27, 2010 (Ex. K).

On July 20, 2010, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850

of the Florida Rules of Criminal Procedure (Ex. L at 1–6).  In an order rendered July 30, 2010, the

state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing

an amended motion within thirty (30) days (id. at 7–9).  Petitioner filed an amended motion on

August 9, 2010 (id. at 10–16).  The state circuit court summarily denied the motion in an order

rendered August 27, 2010 (id. at 17–26).  Petitioner appealed the decision to the First DCA, Case

No. 1D10-5775 (Ex. M).  The First DCA affirmed the decision per curiam without written opinion

on January 20, 2011, with the mandate issuing March 16, 2011 (Exs. N, Q).  Dubon v. State, 54 So.

3d 492 (Fla. 1st DCA 2011) (Table).

On March 24, 2011, Petitioner filed a motion for leave to file a successive Rule 3.850 motion

in the state circuit court (Ex. R).  The state circuit court summarily denied the motion without

prejudice in an order rendered April 1, 2011 (Ex. S).  On April 12, 2011, Petitioner filed a second

Rule 3.850 motion (Ex. T at 1–12).  The state circuit court dismissed the motion as improperly

successive on July 20, 2011 (id. at 21–23).  Petitioner appealed the decision to the First DCA, Case

No. 1D11-4218 (Exs. T at 41).  The First DCA affirmed the decision per curiam without written

opinion on October 27, 2011, with the mandate issuing January 6, 2012 (Exs. U, X).  Dubon v. State,

75 So. 3d 1249 (Fla. 1st DCA 2011) (Table).

Petitioner filed the instant federal habeas action on August 5, 2012 (doc. 1 at 14).[2]

## II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no

Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district

court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L.

Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," <i>id.</i>, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

---

[4] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
          (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . .

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

.,," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly

unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

Ground One:  "I am being held in violation of my U.S. Constitution Amendment Six right [sic] to effective assistance of counsel."

Ground Two: "I am being held in violation of my U.S. Constitution 6th Amendment right to effective assistance of counsel and 14th Amendment due process."

Petitioner alleges his trial counsel rendered ineffective assistance by erroneously advising him he could prevail at trial with a defense of self-defense, which caused Petitioner to reject a 20-year plea offer by the State (doc. 1 at 5).  Petitioner alleges but for counsel's erroneous advice, he would have accepted the State's plea offer (*id.*).  Petitioner additionally alleges defense counsel failed to properly investigate and present testimony from Alberto Dubon in support of his theory of self-defense (*id.* at 5–6).  Petitioner alleges Alberto Dubon would have testified that the victim initiated and was the aggressor in the fight with Petitioner, which led to the victim's death (*id.*).  He alleges Alberto Dubon also would have testified that the murder victim was a dangerous person with a history of violence in Honduras, their home country (*id.*).  Petitioner alleges that although Alberto Dubon was extradited to Honduras prior to Petitioner's trial, he was available to testify via satellite (*id.*).

Respondent contends Petitioner's claims are unexhausted and procedurally barred (doc. 17 at 7–10).  Respondent asserts Petitioner first brought both of these claims in his second Rule 3.850 motion, but the state court dismissed the motion on the procedural ground that it was impermissibly successive (*id.*).  Respondent argues Petitioner has not shown that an external impediment prevented him from raising his claims in his first Rule 3.850 motion, nor has he alleged the existence of new reliable evidence showing he is actually innocent of the murder (*id.*).  Therefore, his claims are procedurally barred from federal review (*id.*).

In his reply, Petitioner argues his procedural default was caused by his inability to speak or understand English, and his possible mental illness (doc. 22).  Petitioner alleges the prisoner law clerk who assisted him in preparing his first Rule 3.850 motion did not speak Spanish, which is the language Petitioner speaks and understands (*id.*).  Petitioner alleges during the underlying trial

proceedings, the court recognized he could not speak or understand English, and the court employed the services of an interpreter to protect Petitioner's rights (*id.*). Petitioner alleges a different prisoner law clerk, who spoke fluent Spanish, assisted him in preparing his second Rule 3.850 motion (*id.*). He alleges this second prisoner took time to gain a better understanding of the trial record and discovered legal issues that the first prisoner law clerk overlooked (*id.*). Petitioner additionally alleges his possible mental illness inhibited his ability to present all of his claims in his first Rule 3.850 motion, which was filed in July of 2010 (*id.*). He alleges a police officer who investigated the murder in June of 2005, described his behavior just after the murder as abnormal (*id.*).[8] Petitioner alleges the language barrier and his possible mental illness precluded him from raising his claims in his first Rule 3.850 motion (*id.*).

The record demonstrates Petitioner raised the claims asserted in Grounds One and Two in his second Rule 3.850 motion (Ex. T at 4–9). The state circuit court dismissed the motion as impermissibly successive, pursuant to Rule 3.850(f) (*id.* at 21–23). Rule 3.850(f) provides:

> A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.

Fla. R. Crim. P. 3.850(f). The state circuit applied this rule to Petitioner's motion as follows:

> In the instant motion, Defendant makes four allegations of ineffective assistance of counsel: 1) failure to advise Defendant of a plea offer "properly"; 2) failure to investigate; 3) failure to call witnesses; and 4) failure to have Defendant evaluated for competency.[FN 7] The Court can discern, and Defendant has advanced, no reason why Defendant could not have raised his instant contentions in his first postconviction motion. Defendant knew the facts pertaining to these claims before he filed his original motion in July 2010, more than a year after Defendant

---

[8] At Petitioner's trial, Rikki McDaniel, a female crime scene investigator, testified she took photographs of the crime scene, including photographs of Petitioner (Ex. D at 253–94). She described Petitioner's demeanor as follows:

> He was laughing a lot, giggling a lot, bouncing, jumping up and down, trying to move away from the camera. Every time I tried to take a photo, he would move or turn his back to the camera. He was lunging at me, making kissing noises. When I would try to take pictures—photographs of his face, he would lung [sic] at me to—I guess making kissing noises.

(Ex. D at 262).

Case No.: 3:12cv382/MCR/EMT

had ben convicted and sentenced. Hence, Defendant's instant 3.850 motion is successive and is hereby dismissed with prejudice.

> [FN 7: Defendant does not allege that he was incompetent to stand trial but that he should have been evaluated for mitigation purposes.]

(Ex. T at 22). Petitioner appealed the decision to the First DCA (*id.* at 41–42). The First DCA affirmed without written opinion (Ex. U).

As previously discussed, a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See* Coleman, 501 U.S. at 747–48; Sykes, 433 U.S. at 84–85. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a non-federal ground adequate to support the judgment, and the rule is firmly established and consistently followed. *See, e.g.*, Walker v. Martin, — U.S. —, 131 S. Ct. 1120, 1127–28, 179 L. Ed. 2d 62 (2011). A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review, even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others. *See* Beard v. Kindler, 558 U.S. 60, 130 S. Ct. 612, 175 L. Ed. 2d 417 (2009). Florida's procedural bar on successive Rule 3.850 motions is an independent state ground, and it is firmly established and regularly followed by the Florida courts. *See* Fla. R. Crim. P. 3.850(f); Christopher v. State, 489 So. 2d 22, 24 (Fla. 1986); Frazier v. State, 898 So. 2d 1183, 1183–84 (Fla. 3d DCA 2005) (barring as successive claims that could have and should have been made in previous postconviction motion); Washington v. State, 876 So. 2d 1233, 1234 (Fla. 5th DCA 2004) (same); *see also, e.g.*, Barnes v. Sec'y, Fla. Dep't of Corr., No. 3:09cv360/MCR/EMT, 2011 WL 5855080 (N.D. Fla. Oct. 27, 2011) (unpublished) (Florida's rule prohibiting successive Rule 3.850 motions is independent and adequate state procedural rule), *Report and Recommendation Adopted by*, 2011 WL 5855072 (N.D. Fla. Nov. 22, 2011); Lee v. Buss, No. 3:09cv83/RV/EMT, 2011 WL 2784598, at *17 (N.D. Fla. June 28, 2011) (unpublished) (same), *Report and Recommendation Adopted by*, 2011 WL 2746320 (N.D. Fla. July 14, 2011). Therefore, Petitioner is not entitled to federal review of his claims unless he satisfies the "cause and prejudice" exception to the procedural bar or demonstrates that another exception applies.

Petitioner has not shown that an external impediment, that is, "something that cannot fairly be attributed to him," *see* <u>Coleman</u>, 501 U.S. at 753, prevented him from raising his claims in his first post-conviction motion. Evidence that he exhibited strange behavior on the day of the murder in June of 2005 is insufficient to show he suffered from a mental illness in July of 2010, when he filed his first Rule 3.850 motion. Further, Petitioner's lack of proficiency in the English language, the language spoken by the prisoner law clerk who assisted him in preparing his first Rule 3.850 motion, is insufficient to establish cause for his procedural default. Federal courts have held that lack of proficiency in the English language and illiteracy are not considered extraordinary circumstances or external factors that may excuse the procedural requirements a prisoner encounters when seeking post-conviction relief. *See* <u>United States v. Montano</u>, 398 F.3d 1276, 1280 n.5 (11th Cir. 2005) (claim that language difficulties prohibited petitioner from timely discovering a legal argument did not constitute "extraordinary circumstances" as to justify equitable tolling of the one-year filing requirement in § 2255); *see also* <u>Cobas v. Burgess</u>, 306 F.3d 441, 444 (6th Cir. 2002) (inability to read and speak English is not in itself a sufficient basis for equitably tolling a failure to meet § 2244(d)(1) requirements); <u>Vasquez v. Lockhard</u>, 867 F.2d 1056, 1058 (8th Cir. 1988) ("[Petitioner's] pro se status and lack of familiarity with the American language and court system do not constitute cause); <u>Hughes v. Idaho State Bd. of Corr.</u>, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of pro se petitioner not sufficient cause to avoid procedural bar); <u>Joubert v. McNeil</u>, No. 08-23374-civ, 2010 WL 451102, at *4 (S.D. Fla. Feb. 8, 2010) (prisoner is not entitled to equitable tolling of federal habeas limitations period on the basis of his language difficulties); <u>Cortez v. Petrovsky</u>, No. 8:03cv1482-T-30-MSS, 2006 WL 289113, at *2 (M.D. Fla. Feb. 7, 2006) (rejecting petitioner's claim that he was entitled to equitable tolling of limitations period established in § 2244(d) on basis that Florida Department of Corrections did not provide Spanish speaking interpreters to non-English speaking inmates and that he could not read or write to understand what the court required under 2244(d)). Therefore, Petitioner has failed to show cause for his failure to raise his claims in his first Rule 3.850 motion. Moreover, Petitioner has not alleged the existence of new reliable evidence showing he is actually innocent of the murder. Therefore, he failed to demonstrate he is entitled to federal review of the claims asserted in Grounds One and Two.

B.    Ground Three:  "I am being held in violation of my U.S. Constitution 14th Amendment right to equal protection and due process."

Petitioner contends the Florida courts denied his rights to equal protection and due process by failing to provide him an opportunity to amend his second Rule 3.850 motion prior to dismissing it as successive (doc. 1 at 9).  He contends Florida law required the state court to provide him an opportunity to amend a legally or facially insufficient post-conviction motion, pursuant to Spera v. State, 971 So. 2d 754 (Fla. 2007) (*id.*).

Respondent contends this claim presents only an issue of state law and is thus not cognizable in federal habeas (doc. 17 at 10–11).  Further, Petitioner never presented the claim to the state courts; therefore, it is unexhausted and now procedurally defaulted (*id.* at 11–14).

The Eleventh Circuit has repeatedly held that defects in state collateral proceedings do not provide a basis for habeas relief.  *See* Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009); Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam). The reasoning behind this well-established principle is straightforward:  a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—that is, the conviction itself—and thus habeas relief is not an appropriate remedy. *See* Carroll, 574 at 1365; Quince, 360 F.3d at 1261–62; Spradley, 825 F.2d at 1568.  Furthermore, such challenges often involve claims under state law, for example, Florida Rule of Criminal Procedure 3.850, which governs the availability of, and procedures attendant to, post-conviction proceedings in Florida; and a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.  *See* Carroll, 574 F.3d at 1365 (quoting McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992)).

The error of which Petitioner complains occurred during the state postconviction proceeding, not his criminal trial.  The alleged error in failing to provide him an opportunity to amend his successive Rule 3.850 motion does not undermine the legality of his imprisonment.  Further, the alleged error is based purely upon state law, specifically the Florida Supreme Court's interpretation of Florida law and procedural rules in Spera v. State, 971 so. 2d 754 (Fla. 2007).  Therefore, Petitioner is not entitled to federal habeas relief on Ground Three.

C.     Ground Four:  "I am being held in violation of my 5th, 6th, and 14th Amendment rights under the U.S. Constitution, right to a fair trial, due process and right to confrontation."

Petitioner contends the trial court erred in allowing the improper and incomplete testimony of the State's DNA expert (doc. 1 at 11).  He contends admission of the DNA evidence was not consistent with the two-prong standard, set forth in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), "when two people have the same general DNA structure and the same DNA structure was found on the evidence and crime scene site" (doc. 1 at 11).

Respondent contends this claim is unexhausted and procedurally barred from federal review (doc. 17 at 14–16).  Respondent argues Petitioner failed to object to admission of the DNA evidence during trial (*id.* at 15).  Further, although Petitioner challenged on direct appeal the trial court's admission of the DNA evidence, Petitioner argued the issue on purely state law grounds and failed to argue it on federal constitutional grounds, instead merely citing the Fifth, Sixth, and Fourteenth Amendments one time at the end of his argument (*id.* at 15–16).  Respondent contends a second direct appeal is unavailable; therefore, the claim is now procedurally defaulted (*id.* at 16).

In his reply, Petitioner contends his citation to the Fifth, Sixth, and Fourteenth Amendments were sufficient to satisfy the exhaustion requirement (doc. 22 at 20–26).

The state court record supports Respondent's position.  At trial, Petitioner's counsel made no objections during the State's witness's testimony regarding the DNA evidence, and counsel never challenged the admissibility of that evidence (Ex. D at 316–42).  In Petitioner's appellate brief, he argued the trial court erred by (1) allowing the witness to testify as an expert in DNA analysis without the predicate that she was trained and familiar with the statistical frequency within the population calculations, and (2) allowing the DNA match evidence without testimony showing the statistical significance of the match (Ex. F at 11–14).  Petitioner argued that as a result, the jury was left with the false impression of the significance of a "match" in the DNA profiles (*id.*).  Throughout his argument he cited only state cases (one of which cited the Frye test) (*id.*). At the end of his argument, he stated:

> Dubon has been denied his right to due process and a fair trial.  Art. I, Secs. 9, 16
> Fla. Const.; Amends. V, VI and XIV U.S. Const.

(Ex. F at 14).

Passing references to the Constitution, without any discussion or analysis of federal constitutional principles, is insufficient to amount to fair presentation for exhaustion purposes. *See* McNair, 416 F.3d at 1303–04 (one citation to federal case, and passing citation to federal constitutional provisions in closing paragraph of brief, are the types of "needles in the haystack" that are insufficient to satisfy the exhaustion requirement). In the instant case, Petitioner's passing reference to his right to due process and a fair trial under the Florida Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were insufficient to alert the First DCA that he was raising a federal constitutional claim. Indeed, all of the arguments asserted by Petitioner in his initial brief relied exclusively on state court cases. Therefore, the undersigned concludes that Petitioner's claim alleging improper admission of DNA evidence was not exhausted as a federal constitutional claim in the state courts. *See, e.g.*, Jones v. Sec'y, Dep't of Corr., No. 1:07cv207/MMP/GRJ, 2011 WL 3512717, at *3–4 (N.D. Fla. July 6, 2011) (petitioner's passing reference to the Sixth and Fourteenth Amendments to the U.S. Constitution, and the Due Process Clause under the Fifth and Fourteenth Amendments were insufficient to raise a federal constitutional claim regarding the trial court's admission of DNA evidence that did not satisfy Frye standard), *Report and Recommendation Adopted by*, 2011 WL 3511053 (N.D. Fla. Aug. 10, 2011); Rhodes v. Sec'y, Dep't of Corr., No. 8:09cv1350-T-17-TBM, 2010 WL 3819358, at *19–20 (M.D. Fla. Sept. 30, 2010) (in petitioner's appellate brief on direct appeal, his mere citation to state court case which cited Frye did not alert the state court that petitioner was raising a federal constitutional claim with regard to the trial court's failure to exclude testimony of a witness who testified outside his area of expertise); Surrency v. Hadi, No. 8:04cv1579-T-30-EAJ, 2006 WL 3469534, at *4 (M.D. Fla. Nov. 30, 2006) (petitioner failed to exhaust federal claim with regard to trial court's admission of evidence that failed to satisfy Frye standard, where petitioner's entire argument in his brief on direct appeal was based on the standard employed under Florida law to determine the admissibility of testimony regarding scientific testimony, petitioner's only reference to federal law was to the test enunciated in Frye, and petitioner did not articulate any constitutional theory in support of his request for relief in his appellate brief).

Any attempt to return to state court to exhaust this claim would be futile, since the Florida procedural rules do not permit a second direct appeal. Therefore, the claim is procedurally defaulted

for federal habeas purposes. Petitioner has not alleged cause for the procedural default; nor has he shown he is entitled to review of this claim through any other recognized exception to the procedural bar. Therefore, federal review of Ground Four is unavailable.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of August 2013.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of**

**objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**